UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>1. LEYVAN ALVAREZ BASTIDAS,<br>   a/k/a "Ivan"<br>2. HECTOR JAVIER CASTRO MEZA<br>   a/k/a "Pepe"<br>3. LUIS ALBERTO ZAPATA SANCHEZ,<br>   a/k/a "El Negro"<br>4. GUSTAVO CASTRO CAICEDO,<br>   a/k/a "Luis Amaro"<br>5. FIDEL ALBERTO RUALES VALLIJO,<br>   a/k/a "Fidel Alberto Ruales<br>   Vallijo," a/k/a. "Cui"<br>6. MAY ADOLFO MORCILLO MOLINA,<br>   a/k/a. "May"<br>7. BERNARDO ALBERTO MERINO CUARAN,<br>   a/k/a "Gaviota"<br>8. ALEX CASTRO CORTES,<br>   a/k/a "Alex," a/k/a "Ali"<br><br>               Defendants. | ) Crim. No. 09-10216-MLW<br>)<br>) VIOLATIONS:<br>)<br>) 21 U.S.C. §§ 963, 952, 959(a)<br>) and 960(b)(1)(A) - Conspiracy<br>) To Import and Manufacture and<br>) Distribute for Unlawful<br>) Importation Five Kilograms or<br>) More of Cocaine<br>)<br>) 21 U.S.C. §§ 853, 970 - Drug<br>) Forfeiture Allegation<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF DENNIS BARTON IN SUPPORT OF REQUEST FOR EXTRADITION

I, DENNIS A. BARTON, being duly sworn, state the following:

1. I am a citizen of the United States of America and reside in the Commonwealth of Massachusetts.

2. I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and have been so employed for approximately twenty-five years.

3. As a narcotics investigator, I have personally conducted and participated in investigations which have resulted in the arrest and conviction of numerous individuals responsible

1

for smuggling and trafficking in narcotics.

4. Based upon my training and experience as a Special Agent with DEA, I am familiar with the means and methods that narcotics traffickers use to transport, import, and distribute illicit drugs. I also am familiar with the support and assistance that narcotics organizations require to conduct their illegal activities. I also have become knowledgeable about the criminal statutes of the United States, particularly the federal statutes relating to narcotics and conspiracy.

5. Since August 2005, I have been assigned to DEA Operation Beanpot ("Operation Beanpot"). Among other things, Operation Beanpot has targeted the money launderers, businesses, and drug traffickers who import drugs into the United States and utilize the Black Market Peso Exchange to funnel drug proceeds to Colombia.

6. My duties have included conducting an investigation of (1) Leyvan Alvarez Bastidas, a/k/a "Ivan" (hereinafter "Alvarez"), (2) Hector Javier Castro Meza, a/k/a "Pepe" (hereinafter "Castro Meza"), (3) Luis Alberto Zapata Sanchez, a/k/a "El Negro" (hereinafter "Zapata"), (4) Gustavo Castro Caicedo, a/k/a "Luis Amaro" (hereinafter "Castro Caicedo"), (5) Fidel Alberto Ruales Vallejo, a/k/a "Fidel Alberto Ruales Vallijo," a/k/a "Cui" (hereinafter "Ruales Vallejo"), (6) May Adolfo Morcillo Molina, a/k/a "May" (hereinafter "Morcillo"), (7) Bernardo Alberto Merino Cuaran, a/k/a "Gaviota" (hereinafter "Merino") and (8) Alex Castro Cortes, a/k/a "Alex," a/k/a "Ali" (hereinafter "Castro Cortes") (also collectively referred to as the "Defendants") who have been indicted in the case captioned <u>United States v. Alvarez-Bastidas</u>, et al., Crim. No. 09-10216-MLW. As one of the lead investigators, I am familiar with the evidence in this case.

I. <u>Background</u>

7. In the course of Operation Beanpot, DEA has coordinated numerous undercover drug

money pick-ups from drug traffickers across the world and has transferred millions of dollars on their behalf and at their directions in order to identify all individuals involved in the money laundering scheme under investigation. A money pick-up is an undercover operation in which DEA, after negotiating a fee with the traffickers, picks up money from traffickers and subsequently wires it through undercover accounts and, at times, the Black Market Peso Exchange, back to accounts controlled by the traffickers, typically in Colombia and/or Mexico. The undercover money pick-ups in Operation Beanpot have occurred in many cities, including Boston, Massachusetts. Based on investigative leads from an Operation Beanpot money pick-up in the Bahamas in March 2007, Colombia's Departamento Administrativo de Seguridad ("DAS") obtained authorization to conduct lawful interceptions of conversations on several Colombian cellular phones. As a direct result of those lawful telephone interceptions, which took place between April 2008 and February 2009, Colombian authorities have seized approximately 2,000 kilograms of cocaine in Colombia, most of which was the property of the drug trafficking organization led by Alvarez.

    8.    Alvarez is the leader of a large Colombian drug trafficking organization that imports cocaine into the United States. Alvarez's organization uses Filipino Merchant Marines working on commercial container ships to smuggle cocaine into the Bahamas and the United States. Castro Meza, Castro Caicedo, and Castro Cortes are lieutenants for Bastidas; Castro Meza and Castro Cortes work directly with Filipino Merchant Marines to arrange transport of cocaine out of Colombia, while Castro Caicedo works directly with a Bahamian drug trafficker, hereinafter referred to as "SOI." Castro Meza has specifically instructed Merchant Marine sailors to transport cocaine from Colombia to New Orleans, Louisiana. Additionally, Castro Meza told a confidential source ("CS-1") that s/he could make $3,500 for every kilogram of cocaine that s/he transported to the

United States. Zapata controls land routes in Colombia over which Alvarez's cocaine must pass when being transported from the lab to the port in Buenaventura and, therefore, Alvarez must seek Zapata's permission before transporting loads of narcotics over these land routes. Alvarez is in direct contact with Zapata regarding these drug shipments. Merino operates the labratory that supplies Alvarez with cocaine. Merino is assisted by Morcillo. Ruales Vallejo also works closely with Alvarez to coordinate large cocaine shipments. All of the defendants have direct communications and conversations with Alvarez concerning specific details of the narcotics trafficking and distribution.

## II. Evidence

9. On March 5, 2007, DEA conducted an undercover money pick-up in Freeport, Bahamas, of $200,000 in proceeds of illegal narcotics sales. One of the individuals who dropped the money off to the DEA undercover agent was the SOI. Based on the undercover money pick-up with the SOI, DEA learned of numerous Colombian telephone numbers with which the SOI was in contact. DEA provided DAS with those Colombian telephone numbers; DAS thereafter obtained authorization to lawfully intercept conversations over those telephones and other related phones.

10. In March 2008, DAS lawfully intercepted phone conversations between Castro Meza, CS-1, and Alvarez discussing details regarding a cocaine shipment Castro Meza believed was going to the United States. In those calls, Castro Meza specifically asked CS-1 whether s/he was in New Orleans with the drugs. CS-1 subsequently explained to DEA agents that Castro Meza had directed CS-1 to take a small cocaine shipment to New Orleans, Louisiana, from Buenaventura, Colombia, and that CS-1 would be paid $3,500 per kilogram to transport cocaine to the United States. This was a high price which Castro Meza explained to CS-1 was because cocaine sold for $35,000 per

kilogram in the United States.

11. On April 22, 2008, DAS seized 871 kilograms of cocaine which was secreted inside the fuel tank of a tractor trailer in Buga, Colombia. A series of calls lawfully intercepted in Colombia prior to and immediately after the seizure confirmed the involvement of Alvarez's organization. Specifically, in connection with this seizure, DAS lawfully intercepted calls between Alvarez, Castro Meza, Castro Cortes, Castro Caicedo, Ruales Vallejo, and Zapata in which they discussed details of the 871 kilogram cocaine shipment and its seizure by DAS.

12. On July 11, 2008, DAS, with assistance from DEA's Bogota office, seized 91 kilograms of cocaine base from inside a truck in Jamundi, Colombia, and arrested two Colombian nationals associated with Alvarez. One of the truck drivers who was arrested was William Sanchez-Truque, a.k.a. "Willy," who spoke repeatedly to Alvarez in the hours leading up to the seizure. The SOI knows Sanchez-Truque to be a cocaine source for Castro Caicedo, Castro Meza, and Castro Cortes. In addition to the lawfully intercepted calls between Alvarez and Sanchez-Truque, numerous other lawfully intercepted telephone calls prior to and immediately after the seizure confirm the involvement of Alvarez's organization. These telephone calls include conversations between Morcillo and Alvarez and Morcillo and Merino lawfully intercepted on July 11, 2008, in which they discussed specific details of the 91 kilograms of cocaine and it's seizure.

13. On August 18, 2008, DAS, with assistance from DEA's Bogotá Office, seized 665 kilograms of cocaine base concealed inside a mechanized trap in a petroleum truck near Putumayo, Colombia. One Colombian national was arrested at the time of the seizure. Telephone conversations lawfully intercepted by DAS between many of the defendants confirmed that it was Alvarez's cocaine that was seized.

14. On September 21, 2008, DAS, with assistance from DEA's Bogotá Office, seized 79 kilograms of cocaine secreted inside two hidden compartments in a public bus and arrested two Colombian nationals who were operating the bus. A number of lawfully intercepted telephone calls in the days and weeks involving Alvarez, Zapata, and Ruales Vallejo prior to the 79-kilogram seizure confirm their involvement in the 79 kilogram shipment. For example, on September 8, 2008, DAS lawfully intercepted a call between Alvarez and Ruales Vallejo in which Ruales Vallejo said that he had had a long talk with Zapata the night before. Ruales Vallejo told Alvarez that Zapata had said that everything was fine and he also told Alvarez that he (Ruales Vallejo) asked Zapata for his permission,[1] which Zapata granted, telling Ruales Vallejo, "if anything comes up, you know what to do." Ruales Vallejo also explained to Alvarez that Zapata made reference to some of the "guys" that had "fallen" from "the company" (referring to individuals stopped and/or arrested by police).

15. In connection with the September seizure, DAS also lawfully intercepted a call between Alvarez and Zapata in which Alvarez asked Zapata if he had talked to "the people." Zapata told Alvarez that "the guys" were going to be in some type of meeting until around noon and thus he had not been able to speak to them. Zapata told Alvarez that regardless, Alvarez should tell Ruales Vallijo to "start doing it" (referring to accepting and moving the drug load) with caution, and without bringing any attention.

16. On February 11, 2009, DAS, with assistance from the DEA, seized 292 kilograms of cocaine that was concealed inside a propane truck in Espinal, Colombia. Much like the April, July, August, and September 2008 seizures described above, telephone calls lawfully intercepted by DAS

---

[1] According to DAS, Alvarez and Ruales-Vallijo needed permission from Zapata, because the drugs had to pass through a checkpoint controlled by Zapata. Further, Zapata is part of a Colombian Army unit that has control of some checkpoints.

in February 2009 confirm that the seized 282 kilogram shipment belonged to the Alvarez organization.

17. Over the course of the investigation, DAS has lawfully intercepted several phone calls in which members of Alvarez's organization refer to the United States as the destination for their cocaine shipments and source of the proceeds of illegal narcotics sales. In particular, Castro Meza and Castro Caicedo have been lawfully intercepted discussing drug business "at the beach," "where the hurricanes are from," both of which are references to Miami. In addition, other associates of Alvarez have been lawfully intercepted discussing drug shipments to the United States.

18. The SOI has informed DEA that s/he has had conversations with Castro Meza, Castro Cortes, and Castro Caicedo about sending drug shipments to the United States.

19. CS-1 has informed DEA that s/he has transported multiple cocaine shipments from Buenaventura, Colombia, for Castro Meza. According to CS-1, on at least one occasion, Castro Meza specifically directed CS-1 to transport 8-10 kilograms of cocaine from Buenaventura, Colombia, to New Orleans, Louisiana. According to CS-1, Castro Meza had obtained the itinerary of the vessel on which CS-1 was traveling and believed the vessel would be making a port stop in New Orleans. Castro Meza told CS-1 that s/he would be paid $3,500 per kilogram for this. The statements of both the SOI and CS-1 have been corroborated by intercepted phone calls, Western Union receipts, and drug seizures by the Bahamanian authorities, among other things.

### III. Identification

23. Leyvan Alvarez Bastidas, a/k/a "Ivan," is a citizen of the Republic of Colombia. He was born on April 28, 1971, and holds Colombian cedula number 18.184.320. Attached to this affidavit as "Exhibit D-1" is a copy of Leyvan Alvarez Bastidas's cedula registry information.

Leyvan Alvarez Bastidas has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-1," has been confirmed to be that of Leyvan Alvarez Bastidas, a/k/a "Ivan," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Leyvan Alvarez Bastidas, a/k/a "Ivan," because on October 24, 2008, in a lawfully intercepted telephone conversation discussing cocaine trafficking, Leyvan Alvarez Bastidas provided his cedula number (18.184.320) to the person with whom he was overheard speaking. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-1 is Leyvan Alvarez Bastidas, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 18.184.320.

24.     Hector Javier Castro Meza, a/k/a "Pepe," is a citizen of the Republic of Colombia. He was born on May 1, 1963, and holds Colombian cedula number 94.307.832. Attached to this affidavit as "Exhibit D-2" is a copy of Hector Javier Castro Meza's cedula registry information. During physical surveillance, DAS asked him to provide identification, which he did. That identification confirmed his identity as Hector Javier Castro Meza and verified that his cedula number is 94.307.832. In addition, CS-1 recognizes Hector Javier Castro Meza's voice from numerous judicially-authorized Colombian wiretaps discussing cocaine and has identified Exhibit D-2 as a picture of Hector Javier Castro Meza, a/k/a "Pepe," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Hector Javier Castro Meza, a/k/a "Pepe." In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-2 is Hector Javier Castro Meza, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula

number 94.307.832.

25.  Luis Alberto Zapata Sanchez, a/k/a "El Negro," is a citizen of the Republic of Colombia. He was born on May 14, 1967, and holds Colombian cedula number 18.111.962. Attached to this affidavit as "Exhibit D-3" is a copy of Luis Alberto Zapata Sanchez's cedula registry information. Luis Alberto Zapata Sanchez has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-3," has been confirmed to be that of Luis Alberto Zapata Sanchez, a/k/a "El Negro," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Luis Alberto Zapata Sanchez, a/k/a "El Negro," because in a telephone conversation lawfully intercepted on December 2, 2008, which included discussions of details of cocaine shipments, Luis Alberto Zapata Sanchez also provided his cedula number (18.111.962) to the person he was speaking with and confirmed that his last name was "Sanchez." In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-3 is Luis Alberto Zapata Sanchez, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 18.111.962.

26.  Gustavo Castro Caicedo, a/k/a "Luis Amaro," is a citizen of the Republic of Colombia. He was born on August 26, 1959, and holds Colombian cedula number 16.479.447. Attached to this affidavit as "Exhibit D-4" is a copy of Gustavo Castro Caicedo's cedula registry information. Gustavo Castro Caicedo has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-4," has been confirmed to be that of Gustavo Castro Caicedo, a/k/a "Luis Amaro," the person whose criminal conduct is described in this affidavit and who has been charged in indictment

number 09-10216-MLW as Gustavo Castro Caicedo, a/k/a "Luis Amaro," because in two separate phone conversations lawfully intercepted on February 13, 2008, and February 21, 2008, in the course of discussing details of cocaine shipments, Gustavo Castro Caicedo provided the persons he was speaking with personal identification information that confirmed his identity as Gustavo Castro Caicedo. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-4 is Gustavo Castro Caicedo, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 16.479.447.

27.     Fidel Alberto Ruales Vallejo, a/k/a "Fidel Alberto Ruales Vallijo," a/k/a "Cui," is a citizen of the Republic of Colombia. He was born on December 14, 1973, and holds Colombian cedula number 98.387.394. Attached to this affidavit as "Exhibit D-5" is a copy of Fidel Alberto Ruales Vallejo's cedula registry information. Fidel Alberto Ruales Vallejo has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-5," has been confirmed to be that of Fidel Alberto Ruales Vallejo, a/k/a "Fidel Alberto Ruales Vallijo," a/k/a "Cui," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Fidel Alberto Ruales Vallejo, a/k/a "Fidel Alberto Ruales Vallijo," a/k/a "Cui," because On July 3, 2008, in a lawfully intercepted conversation, which included details of cocaine shipments, Fidel Alberto Ruales Vallejo provided Alvarez with his Cedula number of 98.387.394 in order to facilitate a $7 million Colombian money transfer (approximately $3,500 U.S.) to Zapata. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-5 is Fidel Alberto Ruales Vallejo, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 98.387.394.

10

28.     May Adolfo Morcillo Molina, a/k/a "May," is a citizen of the Republic of Colombia. He was born on June 19, 1981, and holds Colombian cedula number 16.844.497. Attached to this affidavit as "Exhibit D-6" is a copy of May Adolfo Morcillo Molina's cedula registry information. May Adolfo Morcillo Molina has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-6," has been confirmed to be that of May Adolfo Morcillo Molina, a/k/a "May," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as May Adolfo Morcillo Molina, a/k/a "May," because after lawfully intercepting numerous calls in advance of a cocaine seizure on July 11, 2008, Colombian law enforcement authorities conducted a motor vehicle stop on a vehicle identified in the intercepted calls and determined it was Morcillo Molina when he provided his Colombian driver's license. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-6 is May Adolfo Morcillo Molina, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 16.844.497.

29.     Bernardo Alberto Merino Cuaran, a/k/a "Gaviota," is a citizen of the Republic of Colombia. He was born on November 22, 1982, and holds Colombian cedula number 16.846.337 Attached to this affidavit as "Exhibit D-7" is a copy of Bernardo Alberto Merino Cuaran's cedula registry information. Bernardo Alberto Merino Cuaran has been intercepted on numerous lawful, judicially-authorized, Colombian telephone interceptions discussing cocaine trafficking. This photograph "Exhibit D-7" has been confirmed to be that of Bernardo Alberto Merino Cuaran, a/k/a "Gaviota," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Bernardo Alberto Merino Cuaran, a/k/a "Gaviota,"

because on December 12, 2008, in a lawfully intercepted telephone conversation, Alvarez asked Bernardo Alberto Merino Cuaran if he (Alvarez) could put an apartment he was buying in Jamundi Valle, Colombia, in Merino Cuaran's name. Bernardo Alberto Merino Cuaran agreed and provided Alvarez with his cedula number of 16.846.337. Sources of information and law enforcement officials who have reviewed the recording of the December 12, 2008, conversation have confirmed that the voices of the persons identified as Alvarez and Bernardo Alberto Merino Cuaran in that conversation are the voices of the same persons identified as Alvarez and Bernardo Alberto Merino Cuaran that were lawfully intercepted in other conversations discussing the cocaine trafficking described in this affidavit. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-7 is Bernardo Alberto Merino Cuaran, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 16.846.337.

30.     Alex Castro Cortes, a/k/a "Alex," a/k/a "Ali," is a citizen of the Republic of Colombia. He was born on December 13, 1975, and holds Colombian cedula number 94.325.844. Attached to this affidavit as "Exhibit D-8" is a copy of Alex Castro Cortes' cedula registry information. Alex Castro Cortes has been intercepted on numerous lawful, judicially-authorized Colombian telephone interceptions discussing cocaine trafficking. This photograph, "Exhibit D-8," has been confirmed to be that of Alex Castro Cortes, a/k/a "Alex," a/k/a "Ali," the person whose criminal conduct is described in this affidavit and who has been charged in indictment number 09-10216-MLW as Alex Castro Cortes, a/k/a "Alex," a/k/a "Ali," because on June 2, 2009, Colombian law enforcement authorities lawfully intercepted a telephone conversation between "Alex" and his brother, Hugo Castro, who is living in the United States. Based on personal identification

information provided by "Alex" in that phone call, DAS was able to confirm that "Alex" was Alex Castro Cortes, a/k/a "Alex," a/k/a "Ali," with cedula number 94.325.844. Sources of information and law enforcement officials who have reviewed the recording of the June 2, 2009, conversation have confirmed that the voice of the person identified as Alex Castro Cortes in that conversation is the voice of the same person identified as Alex Castro Cortes that was lawfully intercepted in other conversations discussing the cocaine trafficking described in this affidavit. In addition, law enforcement agents in Colombia have confirmed that the person in Exhibit D-8 is Alex Castro Cortes, the person who was recently arrested in Colombia on the provisional arrest warrant issued in this matter and the holder of cedula number 94.325.844.

_____
DENNIS A. BARTON, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me
this 26 day of October 2009.

_____
HONORABLE JUDITH G. DEIN
Chief United States Magistrate Judge